**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:
JAMES HENRY TILMON,           :
                              :  Civil Action No. 05-5541 (KSH)
         Petitioner,          :
                              :
    v.                        :       **O P I N I O N**
                              :
GRACE ROGERS,                 :
                              :
         Respondent.          :
_____:


**KATHARINE S. HAYDEN, District Judge**

Petitioner, James Henry Tilmon, filed the within petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Respondent filed an answer and relevant state court record. The Court has considered all submissions. For the reasons set forth below, the petition will be denied.


## BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Superior Court of New Jersey, Appellate Division's ("Appellate Division") factual recitation:

J.H.T. has a significant history of sexually violent acts. On December 13, 1973, J.H.T. was arrested and charged with raping a fourteen-year-old girl. J.H.T., then a juvenile, was adjudicated delinquent and sentenced to an indeterminate term at a youth facility. On May 3, 1978, J.H.T., while in the military service, entered a female member's barracks in the early morning, and informed the victim that one of her supervisors requested her assistance and that he would escort her to the supervisor's office. Instead, J.H.T. drove the victim, at knifepoint, to an isolated area of the base, bound her hands, gagged her, and forcefully engaged in vaginal, oral and anal intercourse while the victim pleaded for her life. He was arrested and charged with sexual assault rape, sodomy, aggravated assault, and intimidation of a female member of the United States Army. J.H.T. was sentenced to four years hard labor at the United States Disciplinary Barracks.

On November 20, 1981, while on parole for four months, J.H.T. lured two women, D.M. and G.C., into his car by offering them a ride to their destination. He then brandished a knife and ordered both women down on the floor of his car. D.M. escaped from the vehicle and notified the police. J.H.T. was arrested and charged with aggravated assault, terroristic threats and kidnapping. He was sentenced to an indeterminate term of incarceration not to exceed five years, to run concurrently with the sentence for his parole violation.

The predicate offense occurred on November 13, 1987. J.H.T. was introduced to the female victim, T.S., and allegedly was informed that she was willing to sexually gratify him in exchange for cocaine. J.H.T., T.S. and T.S.'s four year-old daughter, checked into a motel room in Cinnaminson Township where J.H.T. and T.S. ingested cocaine. The victim's daughter was placed in an adjoining room. J.H.T. then tied T.S.'s hands behind her back and sodomized her. The force of J.H.T.'s assault caused the tearing and hemorrhaging of the victim's anal tissue. J.H.T. gagged T.S. with a bed sheet so tightly that it was forced down T.S.'s throat, causing her to suffocate to death.

On January 24, 1989, a jury found J.H.T. guilty of first-degree felony murder, . . . first-degree

> aggravated manslaughter, . . . and first-degree aggravated sexual assault . . . . J.H.T.'s convictions were reversed on appeal, and, on March 16, 1992, he plead guilty to first-degree aggravated sexual assault. The plea agreement provided that regardless of the Avenel evaluation, J.H.T. would not be sentenced to Avenel . . . . On September 4, 1992, J.H.T. was sentenced to a twenty-year term of imprisonment with an eight-year period of parole ineligibility.
>
> On March 8, 2000, the Attorney General filed a petition seeking J.H.T.'s civil commitment, upon the expiration of his prison sentence, pursuant to the SVPA. Allan Goldberg, M.D. and Carlo J. Baril, M.D., both psychiatrists, provided certifications in support of J.H.T.'s commitment. Based upon those certifications, Judge Joseph Lisa found that J.H.T. suffered "from a mental abnormality or personality disorder that makes [J.H.T.] likely to engage in acts of sexual violence if not confined to a secure facility for control, care and treatment." On March 8, 2000, Judge Lisa temporarily committed J.H.T. to a treatment facility pending a final hearing. Judge Serena Perretti conducted a hearing on July 31, 2000 at which time the court found that J.H.T. was a sexually violent predator as defined by the SVPA, and directed that J.H.T. be committed to a secure facility for the custody, care and treatment of sexually violent predators.

(Respondent's Exhibit ("Re") 1, Opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division"), In the Matter of the Civil Commitment of J.H.T., A-0561-02T2 (July 7, 2004), pp. 3-6).[1]

The Appellate Division noted in its opinion that first and second annual review hearings were held, wherein various medical professional testified. On July 7, 2004, the Appellate Division

---

[1] "J.H.T." are petitioner's initials. "SVPA" refers to the New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24, et seq.

3

affirmed the judge's findings and decision to continue petitioner's commitment.  Petitioner petitioned for certification to the New Jersey Supreme Court for review of the Appellate Division decision.  The New Jersey Supreme Court denied certification on November 24, 2004.

The instant petition was filed on November 23, 2005.  On April 13, 2006, petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On September 15, 2006, respondent filed an answer and the relevant state court record.

## DISCUSSION

**A.   Petitioner's Claims.**

Petitioner asserts the following four arguments for habeas relief:

1.  Retroactive application of the SVPA denied Defendant due process of the law.

2.  Application of the SVPA violated Defendant's 1992 plea agreement.

3.  Defendant had a right to a jury trial when he faced possible lifetime confinement under the SVPA.

4.  The SVPA did not protect Defendant's due process rights in civil commitment.

See Petition for Writ of Habeas Corpus, ¶ 12.

It appears that petitioner has raised the instant claims before the New Jersey state courts.  To the extent that the claims have not been presented, this Court will excuse the

exhaustion requirement, as the claims are not meritorious.  See 28 U.S.C. § 2254(b)(2); Duncan v. Walker, 533 U.S. 167, 203 n.6 (2001)(noting that under § 2254(b)(2), a district court may deny non-exhausted, non-meritorious claims); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003)(same).

**B.     Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

5

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at

6

411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C.   Claims Regarding Retroactive Application of SVPA (Ground 1) and Violation of Plea Agreement (Ground 2).**

Petitioner argues in Ground 1 that when he plead guilty, he was not advised that the conviction could be used to confine him for the rest of his life. He states that prior to the enactment of the SVPA in 1998, his conviction did not qualify him for civil commitment. In Ground 2, Petitioner argues that his reasonable

8

expectations under the 1992 plea agreement were not fulfilled, when he remained in the custody of the Department of Corrections after the expiration of the sentence for the 1992 conviction.

The Appellate Division rejected these claims. While noting that currently "a defendant who is pleading guilty to a predicate offense under the SVPA must understand that as a result of the plea, there is a possibility of future commitment for an indefinite period of time, up to and including lifetime commitment," (Re1 at p. 14) the Appellate Division found that petitioner's plea agreement was not violated:

> By its terms, J.H.T.'s 1992 plea agreement precluded his placement at Avenel while serving his criminal sentence. This agreement was honored. It did not preclude the possibility of commitment under the SVPA because the SVPA was not enacted until 1998. Further, J.H.T.'s plea agreement cannot be construed to preclude any subsequent civil commitment under the SVPA because such a construction would be void as against public policy.

(Re1 at pp. 14-15 (citation omitted)).

As the Appellate Division pointed out, the Sexually Violent Predator Act was approved in 1998, to become effective in 1999, well after petitioner entered into his plea agreement. See N.J.S.A. 30:4-27.24. While New Jersey currently mandates that a criminal defendant entering a plea be informed of the consequences of the plea and the possibility that he may be committed under the SVPA, see State v. Bellamy, 178 N.J. 127 (2003), petitioner's plea occurred in 1992; thus, it would have

9

been impossible for the Court to so inform him, as the SVPA was not yet in effect.[2]

Further, the Court notes that under federal law, due process requires that guilty pleas be entered intelligently and voluntarily.  See Boykin v. Alabama, 395 U.S. 238, 242 (1969).  A plea does not qualify as intelligent "unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).  The Court of Appeals for the Third Circuit has held that the only direct consequences relevant to evaluating the voluntariness of a guilty plea are the maximum prison term and fine for the offense charged.  See Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996), superseded by statute on other grounds as stated in Dickerson v. Vaughn, 90 F.3d 87 (3d Cir. 1996).

In this case, petitioner challenges his guilty plea only to the extent that he became eligible for commitment under the SVPA.  Thus, petitioner does not state a constitutional violation or

---

[2] The Court notes that in New Jersey, challenges to guilty pleas may be entertained in state court by filing a motion to withdraw the guilty plea.  See N.J. Ct. R. 3:21-1.

10

otherwise demonstrate that he is entitled to habeas relief on these claims.[3]

### D.  Claims Regarding Jury Trial (Ground 3).

In Ground 3 of his petition, petitioner argues that he should have been afforded a jury trial prior to the possible lifetime commitment under the SVPA.  The Appellate Division rejected this claim under New Jersey law.

As stated by the Appellate Division, it is clear that under New Jersey law, there is no right to a jury trial in SVPA hearings.  See In re the Commitment of J.H.M., 367 N.J. Super. 599, 606-08 (App. Div. 2003), certif. denied, 179 N.J. 312 (2004)(finding that persons subject to commitment under the SVPA are not entitled to more constitutional protections than afforded by the statute, and noting that the SVPA statute does not provide for jury trials), disapproved of on other grounds in, In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 493 (App. Div. 2005).

---

[3]  If petitioner is asserting an ex post facto challenge to the SVPA, the Court notes that the United States Supreme Court has upheld against ex post facto challenges the Kansas Sexually Violent Predator Act, a statute substantially similar to the New Jersey Sexually Violent Predator Act.  See Kansas v. Hendricks, 521 U.S. 346 (1997); see also Seling v. Young, 531 U.S. 250 (2001); In re Commitment of J.H.M., 367 N.J. Super. 599 (App. Div.) (New Jersey Sexually Violent Predator Act does not violate Ex Post Facto Clause), certif. denied, 179 N.J. 312 (2003), disapproved of on other grounds in In re Commitment of A.E.F., 377 N.J. Super. 473 (App. Div. 2005).  Accordingly, the petitioner's claim would fail.

The United States Supreme Court has not decided the issue of whether due process requires a jury trial in civil commitment proceedings,[4] and has not incorporated the Seventh Amendment right to a jury for such cases.[5]  However, the Supreme Court has explained that § 2254(d) directs that if a state court "reached a conclusion 'opposite to that reached by [the Supreme Court] on a question of law' or confronted 'facts that are materially indistinguishable from a relevant Supreme Court precedent' and reached the opposite result, then its decision is contrary to clearly established law."  Poole v. Goodno, 335 F.3d 705, 708 (8th Cir. 2003)(quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)).  The Court of Appeals for the Eighth Circuit noted this, and recently held that because there is no "clearly established" Supreme Court law which would require a jury trial in cases dealing with civil commitment of sexual predators, a habeas petition pursuant to 28 U.S.C. § 2254 asserting such an argument must be denied.  See Poole, 335 F.3d at 710-711.

---

[4] But see United States v. Sahhar, 917 F.2d 1197, 1206-07 (9th Cir. 1990)(due process does not provide right to jury trial in civil commitment proceedings).

[5] The Seventh Amendment to the United States Constitution states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court in the United States, than according to the rules of the common law."  The Seventh Amendment right to a jury trial does not apply to state court proceedings. See City of Monterey v. Del Monte Dunes at Monterey, 526 U.S. 687, 719 (1999).

12

The Eighth Circuit also pointed out that the Supreme Court has permitted states to make their own procedural rules for commitment cases.  See id. at 711 (citing Addington v. Texas, 441 U.S. 418, 431 (1979)).  The Eighth Circuit noted that, "[a]lthough the Court did not speak directly about juries in Addington, it certainly left it open to states to employ their own preferred procedures.  It ruled that a reasonable doubt standard is not required to meet the 'constitutional minimum' for civil commitments, and the same type of reasoning could be applied to the type of jury trial issue we face."  Id. at 709.

This Court agrees with the Eighth Circuit; that is, in order to obtain the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, petitioner must demonstrate the state court decision denying his claim that he is entitled to a jury trial "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  As was the case in the Eighth Circuit, petitioner has not met this standard.

**E.   Due Process in Commitment Claim (Ground 4).**

Petitioner argues in Ground 4 that he was given no notice prior to his civil commitment, was not represented at the probable cause hearing, and was not given an opportunity to

challenge the State's petition for civil commitment at the probable cause hearing.

The Appellate Division discussed the rights afforded Petitioner:

> J.H.T. was afforded the panoply of rights set forth in the SVPA, including representation by counsel at all court hearings, the opportunity to call expert witnesses, the right to cross-examine witnesses, and the ability to present his position through legal argument to the court.  We are satisfied that the Attorney General complied with the statutory requirements for initiating a commitment proceeding under the SVPA.

(Re1 at p. 16).

Involuntary commitment proceedings may be initiated by the Attorney General "by submission to the court of two clinical certificates for a sexually violent predator, at least one of which is prepared by a psychiatrist."  N.J.S.A. 30:4-27.28(c). "Upon receiving these documents, the court shall immediately review them in order to determine whether there is probable cause to believe that the person is a sexually violent predator." N.J.S.A. 30:4-27.28(f).  If the court finds that there is probable cause to believe the person is a sexually violent predator, it shall issue an order authorizing temporary commitment and setting a date for a final hearing within 20 days. N.J.S.A. 30:4-27.28(g); N.J.S.A. 30:4-27.29(a).

New Jersey courts have explained that notice prior to commitment "is necessary to establish there is a *prima facie*

basis to warrant commitment." In re Commitment of M.G., 331 N.J. Super. at 383 (citing Gerstein v. Pugh, 420 U.S. 103 (1975)). However, the "notice and right of an alleged SVP to challenge the documents submitted to the court need not involve testimony nor resolve crucial evidentiary or credibility questions. These issues can be addressed at the twenty-day hearing following the commitment." Id. The New Jersey court continued:

> The probable cause hearing, which we conclude satisfies due process requirements, shall be limited to an inquiry as to whether the documentation provided to the judge satisfies the statutory requirements for commitment. We recognize that in many cases there will be no preliminary challenge, and any appropriate challenge will be reserved until the twenty-day post-commitment hearing.

Id. at 383-84.

Here, petitioner has not shown a constitutional violation. Under federal law, the procedures utilized by New Jersey in identifying and detaining sexually violent predators have withstood constitutional challenges. See Kansas v. Hendricks, 521 U.S. 346 (1997)(finding that the Kansas sexually violent predator statutes, similar to New Jersey's statute, did not violate due process, ex post facto prohibition, or double jeopardy prohibition); see also Greenfield v. New Jersey Dep't of Corrections, 382 N.J. Super. 254, 263 (App. Div. 2006)(finding that the SVPA "provides an affected individual the opportunity to be heard 'at a meaningful time in a meaningful way.' The Constitution requires no more."); In re Commitment of W.Z., 339

N.J. Super. 549 (App. Div. 2001)(upholding SVPA against constitutional challenges).  Here, petitioner has not demonstrated a valid constitutional challenge warranting habeas relief.

Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

## **CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate order accompanies this opinion.

16

            <u>/s/ Katharine S. Hayden</u>
            KATHARINE S. HAYDEN
            United States District Judge

Dated: May 29, 2007